Opinion filed October 21,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00362-CV

                                                    __________

 

                 IN THE
INTEREST OF D.W.W.D. & M.L.B.M.,
CHILDREN

 

 

                                   On
Appeal from the 35th District Court

                                                           Brown
County, Texas

                                               Trial Court
Cause No. CV 08-09-293

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

This
is an accelerated appeal from a trial court’s order terminating appellants’
parental rights.  We affirm.

I.  Background Facts

Virgie DeLisle and Michael
Massey are the biological parents of D.W.W.D. and M.L.B.M.  DeLisle is married
to Timothy DeLisle, but the two are separated.  At the beginning of this case, DeLisle,
Massey, and the children lived with DeLisle’s mother, Kitty Carlisle.

On
August 29, 2008, DeLisle and Carlisle took DeLisle’s one-month-old daughter,
M.L.B.M., to Brownwood Regional Medical Center.  When admitted, the infant
weighed less than her birth weight.  Staff determined that the parents had not
been mixing the formula correctly.  The hospital filed a report with the Texas
Department of Family and Protective Services.

The
Department’s investigation uncovered further causes for concern.  In addition
to difficulties mixing the formula, the Department was concerned that the parents
were using tap water in the formula and that DeLisle, Massey, and Carlisle had
taken M.L.B.M. to swim in Lake Brownwood while the umbilical cord was still
attached to her navel, thereby exposing the infant to a risk of infection.  A
visit to their home revealed it to be filthy.  Twenty-one month old D.W.W.D was
not verbal and had head lice.  DeLisle, Massey, and Carlisle appeared to the Department’s
investigator to be cognitively impaired, a fact psychiatric evaluations later
confirmed.  The Department removed the children from the home and eventually
sought the termination of DeLisle’s and Massey’s parental rights.

            A
jury trial was held in October 2009, with the jury finding by clear and
convincing evidence that the parental rights of DeLisle and Massey should be
terminated.

II. 
Issues

On
appeal, DeLisle and Massey argue that the evidence was legally and factually
insufficient to support the jury verdict terminating their parental rights.  DeLisle
also argues that she was unduly prejudiced by the Department’s excessive use of
leading questions in the direct examination of LVN Angie Willett.

III.  Legal and Factual
Insufficiency

A.  Standard of Review.

The
natural right existing between a parent and a child is of “constitutional
dimensions.”  Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976).  There
is a strong presumption that it is in the child’s best interest to remain with
the natural parent.  In re R.R., 209 S.W.3d 112, 116 (Tex. 2006). 
Grounds for termination must be established by clear and convincing evidence. 
This requires a degree of proof that will produce in the mind of the trier of
fact a firm belief or conviction as to the truth of the allegations sought to
be established.  Tex. Fam. Code Ann.
§ 101.007 (Vernon 2008).

In
a legal sufficiency review, we look at all the evidence in the light most
favorable to the finding to determine whether a reasonable trier of fact could
have formed a firm belief or conviction that its finding was true.  In re J.F.C.,
96 S.W.3d 256, 266 (Tex. 2002).  In doing so, we must assume that the
factfinder resolved disputed facts in favor of its finding if a reasonable
factfinder could do so, and we disregard all evidence that a reasonable
factfinder could have disbelieved or found to have been incredible.  Id.


In
a factual sufficiency review, we must give due consideration to evidence that
the trier of fact could reasonably have found to be clear and convincing.  Id. 
We must determine whether the evidence is such that the factfinder could
reasonably have formed a firm belief or conviction regarding the allegations.  Id. 
We must also consider whether the disputed evidence is such that a reasonable
factfinder could not have resolved that disputed evidence in favor of its
finding. Id.    To determine if the evidence is factually sufficient, we
give due deference to the trial court’s findings and determine whether, on the
entire record, the trial court could reasonably form a firm conviction or
belief that the parent committed an act that would support termination and that
termination of the parent’s parental rights would be in the child’s best
interest.  In re C.H., 89 S.W.3d 17, 28 (Tex. 2002). 

Only
one ground of termination is necessary for a judgment of termination when there
is also a finding that termination is in the child’s best interest. In re
A.V., 113 S.W.3d 355, 362 (Tex. 2003).

B.  Grounds for
Termination.

In
its verdict, the jury found four statutory grounds for the termination of
parental rights:

(1) that the parent had
knowingly placed or allowed the children to remain in conditions or
surroundings which endanger the physical or emotional well-being of the
children.  Tex. Fam. Code Ann. § 161.001(1)(D)
(Vernon Supp. 2010).

 

(2) that the parent had
engaged in conduct or knowingly placed the children with persons who engaged in
conduct which endangers the physical or emotional well-being of the children. 
Section 161.001(1)(E).

 

(3) that the parent had
failed to comply with provisions of a court order that specifically established
the actions necessary for the parent to obtain the return of the children who
have been in the permanent or temporary managing conservatorship of the
Department of Family and Protective Services for not less than nine months as a
result of the children’s removal from the parent as a result of the abuse or
neglect of the children.  Section 161.001(1)(O).

 

(4) that the parent had a
mental or emotional illness or a mental deficiency that renders them unable to
provide for the physical, emotional, and mental needs of the children and will
continue to render the parent unable to provide for the children’s needs until
the 18th birthday of the children, despite at least six months of reasonable
efforts to return the children to the parent.  Section 161.003(a).

 

Section
161.001(1)(E) of the Texas Family Code requires clear and convincing proof that
the parent “engaged in conduct or knowingly placed the child with persons who
engaged in conduct which endangers the physical or emotional well-being of the
child.”  This section refers not only to the parent’s acts, but also to the
parent’s omissions or failures to act.  In re J.A., 109 S.W.3d 869, 875
(Tex. App.—Dallas 2003, pet. denied).  Endanger means “to expose to loss or
injury; to jeopardize.”  In re M.C., 917 S.W.2d 268, 269 (Tex. 1996). 
Although endanger means more than a threat of physical injury or the possible
ill effects of a less-than-ideal family environment, it is not necessary that
the conduct be directed at the child or that the child actually suffers
injury.  Id.  The Department need not establish the specific danger to
the child’s well-being as an independent proposition; the danger may be
inferred from parental misconduct.  Phillips v. Tex. Dep’t of Protective
& Regulatory Servs., 149 S.W.3d 814, 817 (Tex. App.—Eastland 2004, no
pet.).

At
the time in question, DeLisle and the children had been staying at Carlisle’s
house in Blanket, Texas.  Also staying there was Carlisle’s elderly boyfriend
Clarence Wachoviak.  For the first few months of D.W.W.D.’s life, DeLisle and
her husband Timothy had lived together.  When Timothy discovered that Massey
was the father of D.W.W.D., he and DeLisle separated. After the separation,
Timothy and Carlisle began a sexual relationship.

Massey
moved into the home.  At trial, DeLisle testified that she had concerns about
how Massey disciplined the children but refused to go into specifics.  She also
did not think that he provided for them financially.  Periodically, DeLisle and
Carlisle would kick Massey out, and he would return to his mother’s house in
Bangs, Texas.

Whenever
Massey was not there, Timothy would return to Carlisle’s house.  Timothy was
physically abusive toward DeLisle and Carlisle.  At trial, DeLisle also
testified that Timothy had been violent toward the children.  Carlisle
testified that Timothy is not someone the children should be around.  Nevertheless,
there was evidence that both DeLisle and Carlisle remained in contact with
Timothy up to the date of trial.

Child
Protective Services became involved in this case when M.L.B.M. was hospitalized
a month after she was born for failure to thrive.  When admitted to the
hospital, she weighed four ounces less than her birth weight.  Angie Willett, a
nurse who had treated M.L.B.M. and who had worked at the pediatric department
of the Brownwood Regional Medical Center for six years, testified that M.L.B.M.
was the thinnest failure-to-thrive patient she had seen.  It was determined
that the parents were not making the formula strong enough.  In addition,
doctors were concerned that DeLisle’s use of hot tap water to mix the formula
was exposing the infant to chemicals from the water heater.  DeLisle also
admitted that she, Massey, and Carlisle had taken M.L.B.M. swimming in Lake
Brownwood while the infant’s umbilical cord was still attached, thus risking
infection.

While
DeLisle and Carlisle were at the hospital with M.L.B.M., Massey and Wachoviak
looked after D.W.W.D.  When a C.P.S. investigator visited the house, the place
was filthy.   D.W.W.D. appeared dirty and had a bad case of head lice.  Even
though their pediatrician had told DeLisle and Massey that the only way to
treat the lice was to cut D.W.W.D.’s hair short, Massey had refused to let
anyone do so.  D.W.W.D. appeared to be developmentally delayed. When CPS
removed D.W.W.D. from the home a few days later, he was wearing an outfit that
was too small and a urine-soaked diaper filled with feces.

These
facts are sufficient to allow a reasonable juror to form a firm conviction that
DeLisle and Massey engaged in conduct or knowingly placed the children with
persons who engaged in conduct that endangered the physical or emotional
well-being of the children.  Therefore, the evidence is legally and factually
sufficient to establish grounds for termination under Section 161.001(1)(E) of
the Texas Family Code.  Because only one ground is needed to support a
termination order, it is unnecessary to discuss the remaining statutory
findings.

C.  Best Interests of the
Children.

To
terminate the parent-child relationship, the trial court must also find that
termination is in the best interest of the children.  Tex. Dep’t of Human
Servs. v. Boyd, 727 S.W.2d 531 533 (Tex. 1987).  When reviewing the
sufficiency of the best-interest evidence, we apply the nonexclusive factors
found in Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).  These
factors include (1) the desires of the children, (2) the emotional and physical
needs of the children now and in the future, (3) the emotional and physical
danger to the children now and in the future, (4) the parental abilities of the
individuals seeking custody, (5) the programs available to assist these
individuals to promote the best interest of the children, (6) the plans for the
children by these individuals or by the agency seeking custody, (7) the
stability of the home or proposed placement, (8) the acts or omissions of the
parent that may indicate that the existing parent-child relationship is not a
proper one, and (9) any excuse for the acts or omissions of the parents.  Id. 
The Department need not prove all of these factors.  In re C.H., 89
S.W.3d at 27.  In an appropriate case, proof of just one factor may be
sufficient.  Id.  

After
removal, CPS prepared a family service plan.  Among the tasks required were
that DeLisle and Carlisle participate in individual counseling, undergo a
psychiatric assessment, attend family counseling, and attend parenting classes.

A
psychological evaluation of DeLisle stated that she was “in the mildly retarded
range of intelligence with limited cognitive skills to recognize, understand
and develop appropriate parenting strategies.”  At trial, Kay Oliver, DeLisle’s
CPS therapist, stated that she did not believe that DeLisle had the mental
capacity to care for D.W.W.D. and M.L.B.M. and that DeLisle’s condition would
not improve.  She testified:

[W]hat I was seeing
was lack of an ability to take care of herself, lack of ability to maintain
employment, lack of ability to provide adequate child care.  For example, with
the self-care thing, she told me she had not brushed her teeth since she was
five years old, and she was living with her mother, did not have any means of
support was totally dependent on her mother to bring her to the sessions for
transportation, for a place to live.  I believe she may have been drawing food
stamps on her own, but she had no income of her own.

 

In addition,
Oliver had concerns about things DeLisle would say about parenting.  When
discussing CPS’s concerns about how DeLisle mixed M.L.B.M.’s formula, DeLisle
became very upset and said that “[s]he didn’t think a child should be
pussy-fed, that they need to learn to take up for themselves.”  There were also
concerns about whether DeLisle would be able to put the children’s needs ahead
of her own.  Oliver testified that DeLisle would talk about not having enough
money for food, gasoline, or basic furniture but would show up to sessions with
sculptured nails.

            Oliver
recalled that DeLisle’s relationships with Massey and Timothy changed
frequently throughout the course of her counseling, with DeLisle one week
intending to reconcile with Timothy and the next week intending to move in with
Massey.  Although DeLisle relied on Carlisle for everything, Oliver testified
that their relationship was unstable as well.  They had problems getting along,
and DeLisle talked about being abused by her mother as a child.  Oliver was of
the opinion that the kids should not be placed with DeLisle.

Shay
Martin, a Department caseworker, testified that there was some improvement in the
parents’ interactions during visits with the children after the Department
switched to giving DeLisle and Massey thirty minutes with each child separately
rather than an hour with both children at the same time.  However, after this
initial improvement the interactions remained at the same level.

In
the time since CPS removed the children, DeLisle has qualified to receive SSI
payments.  She moved out of her mother’s house and into a trailer park.  After
a month, she found she could not afford to live there and moved into a camper
trailer near a friend’s house. DeLisle admitted that the camper trailer would
be too small for her and her two children.  If she gets her children back, she
hoped to be able to move into government housing.

Von
Bates, a counselor at the Family Services Center, testified that DeLisle had
made some progress in becoming more independent but admitted that this progress
had been slow. DeLisle still depended on someone else for transportation, and
providing for her children would be a struggle.  Bates testified that she
thought that DeLisle could provide for the physical, mental, and emotional
needs of the children to the best of her ability.  However, Bates based this
opinion on her belief that DeLisle was providing for those needs before the
children’s removal.

Gina
Jameson, DeLisle’s parenting instructor, testified that she believed that DeLisle
could successfully parent the children with the right support system of ongoing
parenting classes, support from the family service center, a good pediatrician,
and stability in her life.

A
psychological evaluation of Massey said that he was “in the mildly retarded
range of intelligence, with limited cognitive skills to recognize, understand
and develop appropriate parenting strategies.”  Dr. Bill Gustavus, Massey’s CPS
therapist, testified that Massey would have difficulty making independent
decisions.

Michael will be
challenged by making decisions about their welfare, about what they need to
eat, about the amount of nurturance that they need, about who is safe to play
with, about where they - - lots of decision.  And, those basic decisions that
you and I take for granted, and that most people perform not perfectly, but to
an acceptable degree, are going to be very challenging areas for [Michael].

 

In
the time since CPS removed the children, Massey qualified to receive SSI
payments. Massey moved into a house in Brownwood with a roommate.  Just before
trial, his roommate moved out.  When asked what he would do now, Massey said he
would pay the rent by himself. Dr. Gustavus doubted that Massey can afford to
do so.

While
in foster care, D.W.W.D. underwent surgery to have tubes put into his ears. 
Since then, his verbal abilities have improved.  M.L.B.M. has a chromosomal
defect inherited from DeLisle and Carlisle.  DeLisle herself questioned whether
she and Massey would have the money or mental abilities to care for the
children.  She agreed that the foster parents were taking good care of them and
that the kids are mixed up now with two sets of parents.

The
evidence is legally and factually sufficient for a reasonable juror to form a
firm conviction that termination of DeLisle’s and Massey’s parental rights
would be in the best interests of D.W.W.D. and M.L.B.M.  Accordingly, we
overrule DeLisle’s and Massey’s sufficiency of the evidence points.

IV. 
Leading Questions

During
direct examination of LVN Angie Willett, DeLisle’s counsel objected three times
to leading questions.  The trial court overruled the second objection.  The
witness’s testimony on direct concerned the diagnosis M.L.B.M. received when
admitted to the hospital, the appearance of the infant, the manner in which the
hospital treated the infant, and her impressions of DeLisle and Carlisle.

On
direct examination, leading questions should be used only when necessary to
develop a witness’s testimony.  Tex. R.
Evid. 611(c).  The decision to allow leading questioning is in the
discretion of the trial court.  Wyatt v. State, 23 S.W.3d 18, 28 (Tex.
Crim. App. 2000); Mega Child Care, Inc. v. Tex. Dep’t of Protective &
Regulatory Servs., 29 S.W.3d 303, 308 (Tex. App.—[14th Dist.] 2000, no
pet.).  Abuse of discretion cannot be shown unless the appellant demonstrates
he was unduly prejudiced as a result of such questioning.  Wyatt, 23
S.W.3d at 28.

DeLisle
cites no particular instances during Willett’s testimony where leading
questions caused her irreparable harm.  Therefore, we overrule her second point
of error.  

V.  Conclusion

The
order of the trial court is affirmed.

 

            

RICK STRANGE

                                                                                    JUSTICE

 

October 21, 2010

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.