**Opinion issued August 30, 2012**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-10-00921-CR & 01-10-00922-CR

_____

## DEONDREA DONTEL JOHNSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1248851 & 1248852**

## MEMORANDUM OPINION

A jury convicted appellant Deondrea Dontel Johnson of sexual assault of a child (trial court case number 1248851, appellate case number 01-10-00921-CR) and compelling prostitution of a juvenile (trial court case number 1248852,

appellate case number 01-10-00922-CR). *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (West 2011) (sexual assault of a child); *id.* § 43.05(a)(2) (compelling prostitution). The jury assessed punishment at 14 years in prison on each conviction, to run concurrently.

Johnson brings five issues on appeal. In one issue, he challenges the sufficiency of the evidence to sustain both of his convictions. In the other four issues, he raises evidentiary complaints, challenging (1) the trial court's overruling of his objections to the leading questions used with the complainant and the State's attempts to refresh her recollection, (2) the trial court's refusal to admit evidence to impeach the complainant, (3) the trial court's admission of evidence of a prior conviction, and (4) the trial court's admission of hearsay from an arrest record. We affirm.

**Background**

When she was 15 years old, complainant S.L. ran away from a group home in Louisiana. Approximately a month later, she met a girl who was driving to Texas, and she rode with her to Houston. S.L. had no family in Houston, no place to stay, and no job or educational opportunity awaiting her. After her arrival, with nowhere to go, she wandered the streets of southwest Houston, looking for a place to stay. At approximately 2:00 a.m., a white, four-door car approached her.

2

Appellant Johnson was in the rear, with a woman seated next to him. S.L. got into the car.

Johnson and the female passenger later got out of the car, and then the driver took S.L. to an apartment, which she understood to belong to Johnson's aunt. After approximately 30 minutes, Johnson and another woman, named Danielle, came to the apartment. Danielle asked S.L. for her name, social security number, and birthdate, and S.L. provided the information.

That night S.L. slept on the couch, and the next morning Johnson took her to another apartment across the street, where they had sex. Johnson later told her she could "make a lot of money," and he asked her to "make a little money" by "prostituting . . . having sex for money" at "some apartments" that he identified. At trial, S.L. did not recall if Johnson told her how much to charge, but she did recall telling an investigating police officer that she was instructed to make "$500 a day."

S.L. told Johnson she was 15 years old, but at trial she did not remember if she told him her age when they first met. She worked for Johnson for three or four days over the course of a week. She gave him the money she obtained through prostitution, and he gave her food and allowed her to stay in the apartment. Johnson also promised to "take care of" S.L. as long as she was making money for him. They had sex several times after their initial encounter, but after a week

3

Johnson told her to leave. Several weeks later, after seeing Johnson in public, S.L. returned to the apartment, where she stayed for approximately three days before he again told her to leave.

For reasons not revealed in the record, S.L. was stopped by law enforcement, and she gave a statement to Houston Police Department Officer E. Rodriguez about what had transpired between her and Johnson. Based on this statement, Officer Rodriguez compiled a photographic line-up from which S.L. identified Johnson. Johnson was charged by indictment with aggravated sexual assault of a minor and compelling prostitution of a minor.

At trial, S.L. identified Johnson as the person who had engaged in sexual relations with her and asked her to have "sex for money." Her identification of Johnson was nevertheless a contested issue at trial. On cross-examination, S.L. testified that she did not recall whether Johnson was clothed when they had sex, and she did not remember whether Johnson had any tattoos, scars, or burn marks. A sister, stepfather, and former girlfriend all testified that Johnson had tattoos on his torso and arms, a scar on his stomach near his ribcage, and marks on his feet from prior burns.

Johnson did not testify at trial, but his sister and former girlfriend testified in an attempt to establish his alibi. The former girlfriend said that they lived together from June 2005 until January 2010 in a house approximately 25 minutes from the

4

southwest Houston area, where the crimes were alleged to have occurred. She testified that she saw Johnson daily in the middle part of February 2009 because they lived together throughout their relationship. She also said that she saw him in the mornings when getting ready for work and in the evenings.

The sister, stepfather, and former girlfriend all testified that Johnson cared for a sick niece at his sister's house for a week around Valentine's Day of 2009. The former girlfriend said that she dropped Johnson off in the morning at his sister's house in southwest Houston, and she picked him up around 7:00 p.m. She also said she was certain that Johnson did not leave their house at night because she would have noticed his absence and because he did not have keys to her car.

On the third day of trial, in a hearing outside the presence of the jury, the trial court denied Johnson's motion to testify free from impeachment with prior convictions, including a September 2009 state-jail felony conviction for manufacturing and delivering a controlled substance. Johnson then declined on the record the opportunity to testify, stating that he wished to "remain silent." The prosecutor indicated that she wanted to present one rebuttal witness to refute the testimony that Johnson lived with his former girlfriend from January 2005 to January 2010. The prosecutor stated that Johnson was in jail during part of that time and that the testimony would show that the former girlfriend had been untruthful. Over Johnson's objections pursuant to Rules 403 and 609, the trial

5

court allowed the rebuttal witness to testify. A records custodian from the Harris County Sheriff's Department testified that Johnson was incarcerated in the Harris County Jail from July 16, 2009 until September 11, 2009. She further testified that Johnson was arrested in southwest Houston and that he was released to the custody of the state jail. A redacted copy of the judgment for which he served time in state jail was admitted into evidence without objection.

The jury found Johnson guilty of both aggravated sexual assault of a child and compelling prostitution of a juvenile, and it assessed punishment at 14 years in prison on each conviction, to run concurrently. Johnson appealed.

## I.     Sufficiency of the evidence

In his second issue, Johnson argues that the evidence is insufficient to support his convictions. In reviewing the sufficiency of the evidence to support a criminal conviction, a court of appeals will determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). As the exclusive judge of the facts, the jury may believe or disbelieve all or any part of a witness's testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We presume that the fact finder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution if it is supported by the evidence in

6

the record.  *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.  On appeal we may not re-evaluate the weight and credibility of the evidence and thereby substitute our own judgment for that of the fact finder.  *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  In reviewing the evidence, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Johnson argues that the evidence of his guilt is insufficient because S.L.'s testimony was not credible and because it was controverted by the testimony of his sister, stepfather, and former girlfriend.  But S.L. unequivocally testified to the essential elements of each crime for which Johnson was convicted.  A person commits the offense of sexual assault if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means.  TEX. PENAL CODE ANN. § 22.011(a)(2)(A).  For purposes of this offense, a child is a person younger than 17 years of age. *Id.* § 22.011(c)(1).  S.L. testified that she engaged in vaginal intercourse with Johnson the day after she arrived in Houston, when he took her to an abandoned apartment.  She also testified that she was 15 years old at the time.

"A person commits the offense of compelling prostitution if [he] knowingly . . . causes by any means a child younger than 18 years to commit prostitution, regardless of whether [he] knows the age of the child at the time [he]

7

commits the offense." *Id.* § 43.05(a)(2). Prostitution includes offering to engage, agreeing to engage, or engaging in sexual conduct for a fee. *Id.* § 43.02(a)(1). S.L. testified that Johnson asked her to "make a little money" by having sex for money, and in exchange he gave her a place to stay, food, and an offer to care for her. S.L. also testified that she engaged in sexual acts for money, most of which she gave to Johnson.

Johnson argues that S.L.'s reluctant testimony, which included repeated answers of "I don't know" and "I don't remember," and her inability to recall his scars and tattoos, rendered her testimony insufficient in light of the controverting testimony from his sister, stepfather, and former girlfriend. This argument challenges S.L.'s credibility. Determinations about the credibility of the witnesses are within the province of the jury, and this court may not substitute its judgment in that regard on appeal. *See Williams*, 235 S.W.3d at 750.

Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found the essential elements of both crimes beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005) (establishing that conviction for offense of sexual assault of child is "supportable on the uncorroborated testimony of the victim of the sexual offense"); *Navarro v. State*, 241 S.W.3d 77, 81 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("The

8

testimony of a child victim alone is sufficient to support a conviction for indecency with a child."). We hold that the evidence of Johnson's guilt was legally sufficient to support both convictions, and we overrule Johnson's second issue.

## II. Evidentiary challenges

In his first, third, fourth, and fifth issues, Johnson complains of trial court errors in the admission or exclusion of evidence. We review trial court rulings concerning admission or exclusion of evidence under an abuse of discretion standard. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004); *Smith v. State*, 340 S.W.3d 41, 53–54 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)); *Smith*, 340 S.W.3d at 53–54. In reviewing a trial court's ruling for an abuse of discretion, an appellate court will not intercede as long as the trial court's ruling is at least within the zone of reasonable disagreement. *See Montgomery*, 810 S.W.2d at 391.

To preserve error relating to the admission of evidence, a party must make a proper objection and obtain a ruling on that objection. TEX. R. APP. P. 33.1(a)(1)-(2); *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004). Even if the trial court errs by permitting the admission of evidence, we will

9

only reverse a conviction on that basis if the error had a substantial and injurious effect or influence on the jury's verdict. *See* TEX. R. APP. P. 44.2(b). "We should not overturn the conviction if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect." *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008).

## A. Leading questions

In his first issue, Johnson contends that the trial court erred by overruling his objections to the State's use of leading questions, which he contends improperly revealed information from the investigating officer's offense report. At trial, Johnson repeatedly objected to the prosecutor's questioning on the grounds that her questions were leading. On appeal, he complains about specific instances of questioning, and he argues that the use of leading questions "likely led to a false imprint in the juror's minds." The State responds generally that the trial court properly exercised its discretion in permitting the use of leading questions because S.L. was 17 years old at the time of trial, had a troubled background, and was reluctant to testify. *See Padilla*, 278 S.W.3d at 106 ("In cases dealing with child witnesses, the rule against leading questions is somewhat relaxed.").

"A leading question is one which suggests the desired answer or puts words into the witness's mouth to be echoed back." *Mega Child Care, Inc. v. Tex. Dep't of Protective & Regulatory Servs.*, 29 S.W.3d 303, 307 (Tex. App.—Houston [14th

10

Dist.] 2000, no pet.). "A question which calls for the answer yes or no is not therefore necessarily leading; it must go further and suggest which of said answers is desired or what answer is expected." *Hodges v. State*, 108 Tex. Crim. 210, 212, 299 S.W. 907, 908 (1927); *accord Newsome v. State*, 829 S.W.2d 260, 269 (Tex. App.—Dallas 1992, no pet.) ("The mere fact that a question may be answered by a simple 'yes' or 'no' will not render it an impermissibly leading question.").

The Rules of Evidence discourage, but do not forbid, the use of leading questions. Leading questions "should not be used on the direct examination of a witness except as may be necessary to develop the testimony of the witness." TEX. R. EVID. 611(c). Nevertheless, a trial may exercise its "sound discretion" to permit leading questions. *See Wyatt v. State*, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000) (holding that the evidentiary rule "clearly contemplates that some leading questions are acceptable at the trial court's discretion"); *Padilla v. State*, 278 S.W.3d 98, 106 (Tex. App.—Texarkana 2009, pet. ref'd). "The asking of leading questions is seldom a ground for reversal (especially where a child is testifying)." *Uhl v. State*, 479 S.W.2d 55, 57 (Tex. Crim. App. 1972).

In his appellate brief, Johnson identifies eleven instances of allegedly impermissible leading questions. Of those challenges, he only objected to eight of the questions at trial on the basis of improper leading. The trial objections as to the other three instances do not comport with his appellate complaint about leading

11

questions and are therefore waived. *See* TEX. R. APP. P. 33.1; *Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005) (holding error waived because trial objection did not comport with issue raised on appeal).

The remaining instances of allegedly improper questioning pertained to the following areas of inquiry: (1) whether S.L. could recall the name of a street in southwest Houston; (2) whether she could recall leaving the apartment with Johnson the first morning she awoke in Houston; (3) whether she recalled Johnson telling her he "liked the way [she] felt"; (4) two questions about whether she recalled Johnson saying she could "make him a lot of money"; (5) two questions regarding how much money Johnson told her to make in a day; and (6) whether she remembered telling the police officer that Johnson "would have [her] work to the point where [she] would get no rest."

Johnson's objections to the question about whether S.L. recalled a street name and the question about whether she told the police officer that Johnson told her to "get as much money as [she] possibly could" are waived because they were untimely. In both instances, the record reflects that S.L. answered the question before Johnson objected, and he does not argue that he had a legitimate reason to justify the delay. These complaints are not preserved for appeal. *See* TEX. R. APP. P. 33.1; *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008).

12

As to the remaining appellate complaints about the use of leading questions, although we do not consider the trial court's rulings in this regard to be outside the zone of reasonable disagreement in light of the circumstances involving a child witness, even if we were to agree that the questions were impermissibly leading, we nevertheless would conclude that the errors were not harmful. With respect to the question of whether S.L. recalled Johnson saying that he "liked the way [she] felt," S.L. responded that she did not recall that statement. Because the question did not directly relate to any element of the charged offenses, and because S.L. did not follow the "lead" by adopting the prosecutor's suggestion as her own testimony, we cannot conclude that the question, even to the extent it may have been leading, had a "substantial and injurious effect or influence on the jury's verdict." TEX. R. APP. P. 44.2(b).

The record also demonstrates that Johnson could not have been harmed by any of the other testimony elicited by questions that are now challenged on appeal as leading. The Court of Criminal Appeals has held that an appellant is not prejudiced by virtue of leading questions when substantially the same testimony is elicited on cross-examination. *Hernandez v. State*, 643 S.W.2d 397, 400–01 (Tex. Crim. App. 1982); *see also Padilla v. State*, 278 S.W.3d 98, 106 (Tex. App.—Texarkana 2009, pet. ref'd). In this case, the cross-examination of S.L. mooted most of Johnson's objections about leading questions.

For example, in regard to the question of whether S.L. recalled leaving the apartment with Johnson, after the trial court overruled Johnson's objection, S.L. testified that she went to an abandoned apartment and had sex with Johnson. On cross-examination, S.L.'s testimony was substantially the same: she testified that after she awoke in the apartment, Johnson took her to an abandoned apartment. Likewise, regarding the questions about whether S.L. recalled Johnson telling her that she could "make him a lot of money," the same evidence was introduced again on cross-examination:

Q.          Now, when you're in this abandoned apartment, which is right across the street from the aunt's house—

A.          Uh-huh.

Q.          —Mr. Johnson then apparently starts to solicit you about the fact that you could be making a lot of money by working the streets.

A.          Uh-huh.

Q.          Okay. And that—basically, he says: Hey, if you're going to be prostituting, you can make some good money.

A.          Yes.

As to the questions about how much money Johnson told S.L. to make in a day, that evidence also came in elsewhere without objection, and also on cross-examination. The prosecutor asked S.L. whether she "testified earlier that the defendant wanted you to make approximately $500 a day," and S.L. answered in

the affirmative. On cross-examination, Johnson's counsel also asked her about the charge to earn $500 a day:

> Q. Now, Mr. Johnson never told you charge "X" dollars for a specific sex act?
>
> A. No.
>
> Q. He just said: Bring home $500 a day?
>
> A. Yes.
>
> Q. That's what he said to you?
>
> A. Yes.
>
> Q. Now—and you're certain of that?
>
> A. Yes.

Finally, defense counsel revisited on cross-examination the question of whether S.L. worked such long hours that she was tired or got no rest. On direct examination, S.L. testified that she did not remember if Johnson told her how long to work or when to stop working, nor did she remember making any statement to that effect to the police officer. She testified consistently on cross-examination:

> Q. Okay. I'm confused in your testimony because when you were being asked on direct about whether you had worked long hours until you were tired versus you didn't work long hours until you were tired. Do you remember that conversation on direct?
>
> . . . .
>
> A. Huh?

15

Q.        Do you remember that part of your direct testimony?

A.        What?

Q.        There was confusion as to whether you worked long hours until you were tired versus you remembering whether you worked long hours until you were tired.

A.        Yes.

Q.        You remember that?

A.        Yes.

Q.        Which is it?

A.        I don't remember.

In summary, under the difficult circumstances of a direct examination of a reluctant child witness concerning the sensitive subjects of sexual abuse and prostitution, we are not persuaded that the trial court's rulings overruling objections to leading questions were outside the zone of reasonable disagreement so as to constitute an abuse of discretion. However, even to the extent the trial court may have erred, Johnson was not harmed because the same information was otherwise introduced without objection or elicited by defense counsel on cross-examination. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (holding that "overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling").

16

## B. Refreshed recollection

Johnson also argues that the prosecutor used improper techniques to refresh S.L.'s memory. Johnson makes no attempt to segregate the questions that he contends were leading questions from the questions he contends were improper attempts to refresh S.L.'s recollection. Eight of the instances he challenges on appeal were preserved only by an objection that the questions were leading. We cannot reverse the judgment on appeal based on evidentiary arguments that were not timely and specifically raised at trial—i.e., that the leading questions were improper attempts to refresh S.L.'s recollection. *See* TEX. R. APP. P. 33.1(a).

Of the remaining instances of testimony that Johnson challenges on appeal, only twice did Johnson object at trial that the question constituted an improper attempt to refresh S.L.'s recollection. The first instance involved questioning about how long Johnson wanted S.L. to work the first day:

Q. How long would you say that you were out on the street?

A. I don't remember.

Q. Would you say it was a short amount of time or a long period of time?

A. I don't remember.

Q. Do you remember making the statement to Officer Rodriguez back on March 15th of 2009 that the defendant wanted you to work all day?

A. Oh—

17

> Defense counsel: Objection, Judge.   This is improper bolstering and improper recollection.
>
> Trial court:   Overruled.

As we have explained, defense counsel elicited similar testimony on cross-examination on the same topic.  Thus, even if this were error, it was not harmful. *See Leday*, 983 S.W.2d at 717.

The second instance related to the prosecutor's question about how often Johnson had sex with S.L.:

> Q.   Now, go back to your statement.  Okay?  And in speaking with Officer Rodriguez, do you recall saying that during this time frame you would have sex with him almost every day?
>
> Defense:   Objection, Judge.   That's an improper form of recollection and refreshing the witness's memory.  That's hearsay from the standpoint that the officer's notes cannot be a written statement from the complaining witness.
>
> State:   You Honor, if I may, the law states I can refresh her memory from any document.
>
> Trial court: Overrule the objection.
>
> Q.   Do you recall saying that, [S.L.]?
>
> A.   No.

Again, similar testimony was elicited on cross-examination.   After eliciting testimony that she had sex with Johnson on the living room floor in the abandoned apartment, Johnson's counsel asked her how many times she had sex with Johnson.

18

> Q. And, again, how many times did you say you had sex with him? I'm talking—
>
> A. Two to three.
>
> Q. —vaginal intercourse sex?
>
> A. Two or three times.

Because defense counsel elicited similar testimony on cross-examination even if the objected-to statement were error, it was not harmful error. *See id.*; *Burnett*, 88 S.W.3d 633, 637 & n.8 (Tex. Crim. App. 2002) (holding that error affects substantial right when it has substantial and injurious effect on outcome, in light of entire record).

We hold that the errors complained of in this issue were waived or harmless, and we overrule Johnson's first issue.

## III. Exclusion of juvenile criminal offenses

In his third issue, Johnson argues that the trial court erred by ruling that he could not impeach S.L. by questioning her about her juvenile criminal offenses. In particular, he sought to question S.L. about her arrest for failing to identify herself to a police officer and her Louisiana probation for unauthorized use of a motor vehicle.

Before opening statements, the State made an oral motion in limine seeking to prohibit the defense from asking the investigating officer or S.L. about her arrest for failing to identify herself to a police officer. The trial court granted the motion.

19

The next day, before S.L. began testifying, the court held a hearing outside the presence of the jury to consider the admissibility of evidence of S.L.'s juvenile criminal offenses. During this hearing, both S.L.'s arrest for failure to identify herself and her probation for unauthorized use of a motor vehicle were discussed. The trial court ruled that Johnson was not permitted to question S.L. about her juvenile criminal offenses. Johnson's attorney reiterated his objection, saying, "And respectfully note my objection for the record."

On direct examination, S.L. testified that she had lived in foster homes and group homes since the age of seven. She testified that she ran away from group homes eight times before she came to Texas because she felt that she had no freedom there. She said that three times the police brought her back to the group homes, and five times she returned voluntarily. She also testified that when she decided to come to Texas, she "needed to get away from Baton Rouge" because "the police were looking for me." On cross-examination, defense counsel asked S.L. if she knew why the police were looking for her in Louisiana. The State objected, and the court held a hearing outside the presence of the jury. The defense attorney acknowledged that he did not know the answer to the question he had posed to S.L., but he argued that the State had opened the door to the question. The trial court stated, "We've already talked about any UUMV [unauthorized use of a motor vehicle]. We weren't going to go into that. Any juvenile adjudications,

20

we're not going into that." Johnson's counsel argued that the testimony was needed to show that S.L. was not only seeking freedom from the group home but also running away from the police. The trial court allowed S.L. to be questioned on voir dire, outside the presence of the jury:

> Q. Do you know the reason for which the police were looking for you?
>
> A. Yes, sir.
>
> Q. What was that reason, to your understanding?
>
> A. I was on probation and kept running away. I violated my probation by running away.
>
> Q. Your probation for?
>
> A. A previous crime.
>
> Q. Okay. Which crime was that, ma'am? It's just so the record is clear.
>
> . . . .
>
> A. Unauthorized use of a motor vehicle.
>
> Q. Okay. So, you felt the police were after you for violating your probation relating to that crime?
>
> A. Yes, sir.
>
> Q. Okay. Thank you.

Johnson's attorney then stated, "I will not be inquiring into that," and the court responded, "All right. Very good. That settles that."

21

The State argues that Johnson waived this issue for appeal by failing to pursue his objection at trial. In light of counsel's statement that he would not inquire about the conviction, we agree. *See* TEX. R. APP. P. 33.1(a)(1)(A) (stating prerequisite for preservation of error for appellate review); *cf. Gardner v. State*, 306 S.W.3d 274, 293 (holding that error was harmless because defendant "affirmatively stated 'no objection'" when evidence offered at trial); *Harrison v. State*, 333 S.W.3d 810, 812–13 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("[G]enerally, an affirmative statement of 'no objection' waives any error relating to that matter."). We overrule Johnson's third issue.

## IV.    Rebuttal evidence regarding prior conviction

In his fourth issue, Johnson contends that the trial court abused its discretion by permitting the State to introduce evidence of a prior conviction through testimony from a rebuttal witness. Outside the presence of the jury, the trial court ruled that the State could impeach Johnson with evidence of certain of his prior convictions, and Johnson stated on the record that he wished to remain silent.

Johnson's former girlfriend testified in his defense that she saw Johnson daily in mid-February 2009 because they lived together throughout their relationship. On cross-examination, the former girlfriend testified that she spent "every single night" with Johnson during the week in mid-February 2009 when he

cared for his sick niece. The State then asked if Johnson lived with her through January 2010:

> Q. And, again, he continued to live with you at your house until January of 2010?
>
> A. Yes. That's where he was staying.
>
> Q. Do you remember the specific date that he stopped living with you in January of 2010?
>
> A. No. I don't remember the specific date of it, no; but I know that's when he we stopped being a couple.
>
> Q. That's not only when you stopped being a couple, but you are 100 percent certain that that's when he stopped living with you.
>
> A. Yes.

To impeach the credibility of Johnson's former girlfriend as an alibi witness, the State sought to introduce testimony that Johnson was actually in the Harris County jail from July to September 2009, and he was then transferred to a state jail. Johnson objected that a witness may be impeached with her own prior conviction, not with a prior conviction of the defendant. *See* TEX. R. EVID. 609(a). He also objected that the probative value of the evidence did not outweigh its prejudicial effect. *See* TEX. R. EVID. 403. The trial court noted Johnson's running objections.

A custodian of the records of the Harris County Sheriff's Department testified that Johnson was in the Harris County Jail from July 16, 2009 until September 11, 2009; he was arrested in southwest Houston, on the same street

23

where he first encountered S.L.; and he was released to the custody of the state jail. After the records custodian testified that Johnson was released from Harris County Jail to a state jail, the State offered a redacted copy of the judgment for which Johnson went to state jail. Johnson's counsel stated, "No objection as redacted, Your Honor."

Assuming without deciding that the trial court erred by admitting this evidence, we nevertheless conclude that it was harmless because substantially the same evidence came in later without objection. In a harmless error analysis, we must determine if the alleged error affected the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b). Johnson initially preserved error by making a running objection to the admissibility of the rebuttal evidence. But when the State offered the redacted judgment of conviction for admission, Johnson's counsel affirmatively stated that he had no objection to the exhibit. The non-redacted portions of the judgment reveal that: (1) Johnson was convicted of a state jail felony offense that occurred on May 27, 2009; (2) he pleaded guilty and received a plea-bargained sentence of eight months in state jail; (3) sentence was imposed on September 4, 2009; and (4) Johnson was given credit for periods of incarceration from May 27, 2009 to June 4, 2009, and from July 16, 2009 to September 4, 2009. Although Johnson initially preserved error by lodging a running objection, he later waived all such objections by affirmatively stating "no objection" when the exhibit

24

was admitted into evidence. *See Gardner*, 306 S.W.3d at 293. Because the information in the redacted judgment was substantially the same as the testimony offered by the rebuttal witness, we hold that any error in the admission of testimony from the rebuttal witness was rendered harmless by the admission of the redacted judgment of conviction. *See Leday*, 983 S.W.2d at 717. We overrule Johnson's fourth issue.

## V. Admission of hearsay from arrest record

In his fifth issue, Johnson argues that the trial court abused its discretion by permitting the State's rebuttal witness to testify, based on her records, that Johnson was arrested in southwest Houston on the same street where he first encountered S.L. On appeal, Johnson argues that this was impermissible hearsay. At trial, Johnson objected on the basis of relevance. At no point did Johnson raise a hearsay objection to this particular testimony. Because his trial objection does not comport with his issue on appeal, this issue is waived. *See Swain*, 181 S.W.3d at 367. We overrule Johnson's fifth issue.

## Conclusion

We affirm the judgments of the trial court.

Michael Massengale
Justice

Panel consists of Justices Bland, Massengale, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).