MEGA CHILD CARE, INC. and
Bonita Odutayo, Appellant,

v.

TEXAS DEPARTMENT OF PROTEC-
TIVE AND REGULATORY SER-
VICES, Appellee.

No. 14–99–01090–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 28, 2000.

Booker T. Morris, Houston, for appellant.

Raymond C. Winter, Austin, for appellee.

Panel consists of Chief Justice MURPHY and Justices HUDSON and WITTIG.

# OPINION

J. HARVEY HUDSON, Justice.

Bonita Odutayo is the owner and operator of Mega Child Care, Inc., a child care facility. The Texas Department of Protective and Regulatory Services (DPRS) revoked Mega Child Care's license to operate as a child care facility. When Mega Child Care continued doing business, DPRS sought and obtained an injunction to close the facility. Odutayo and Mega Child Care appeal from the granting of the injunction, contending the trial court abused its discretion by: (1) improperly ruling on several evidentiary objections; (2) by granting an injunction against Bonita Odutayo, when there was no evidence she had committed a wrongful act; (3) by granting an injunction against Mega Child Care when there was no evidence it had committed a wrongful act; and (4) by improperly allowing documents to be admitted into evidence during closing arguments. We affirm.

The Legislature has directed that no person may operate a child-care facility without a license or certificate issued by DPRS. *See* Tex. Hum. Res.Code § 42.041 (Vernon Supp.2000). Mega Child Care's state license was revoked by DPRS after an administrative licensing ·hearing in which it was determined that Mega Child Care had violated numerous state child-care standards. Further, Odutayo was found to have abused her own daughter. Thereafter, an administrative law judge from the State Office for Administrative Hearings affirmed the revocation. Mega Child Care subsequently filed a motion for rehearing which was denied as untimely.

Mega Child Care then pursued an appeal to district court. DPRS filed a plea to the jurisdiction, contending judicial review was not available. The court granted the plea and dismissed the appeal. Accordingly, DPRS ordered Mega Child Care to close its facility on or before 6:00 p.m. on September 10, 1999.

Mega Child Care continued to operate without a license, in defiance of DPRS, and appealed the district court's order. DPRS moved for, and was granted, an injunction ordering Mega Child Care to close. Mega Child Care then continued to operate, in defiance of the temporary injunction, and pursued this appeal.

## THE EVIDENTIARY RULINGS

In their first issue for review, appellants contend the trial court abused its discretion by improperly ruling on several evidentiary objections. We will examine each portion of objected-to testimony in turn, to determine if the trial court erred.

### *Leading Questions*

During its case-in-chief, DPRS asked Ms. Waring, one of its investigators, the following two questions which appellants contend were impermissibly leading. First, "is part of your responsibility to oversee and sometimes conduct yourself with inspections or investigations of daycares [sic]"? Second, "and that, in and of itself, is a violation of the order, correct?" Appellant's objections to the questions were overruled by the trial court.

■ A leading question is one which suggests the desired answer or puts words into the witness's mouth to be echoed back. *See GAB Business Services, Inc. v. Moore,* 829 S.W.2d 345, 351 (Tex.App.—Texarkana 1992, no pet.); *Myers v. State,* 781 S.W.2d 730, 733 (Tex.App.—Fort Worth 1989, pet. ref'd). Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the testimony of the witness. *See* Tex.R. Evid. 611. Here, if

the first question does not suggest an answer, the second certainly does.

■ The decision to permit a leading question lies within the sound discretion of the trial court. *See Owens–Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 568 (Tex.App.—Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex.1998). The first question elicited fundamental information about which there was little dispute. We find that the trial court did not abuse its discretion in permitting the question to clarify and develop the witness's testimony. No error is presented.

■ The second question, however, tended to elicit information regarding a central issue of the case. Thus, the trial court abused its discretion in permitting the leading question. To obtain reversal on this point, however, appellant must also show the error probably caused rendition of an improper judgment. *See id.* No such showing was made here. Accordingly, no reversible error is presented.

### *Unauthorized Writings*

■ Appellants claim the trial court erred in admitting into evidence a copy of the administrative judge's opinion and order because it was not properly authenticated. Appellants contend the document was neither self-authenticating nor supported by an authenticating foundation of extrinsic evidence. Our review of a trial court's ruling on the admissibility of evidence is governed by an abuse of discretion standard. *See Texas Dept. of Public Safety v. Mendoza*, 956 S.W.2d 808, 810 (Tex.App.—Houston [14th Dist.] 1997, no writ).

■ The Texas rules of evidence require, as a predicate to admissibility, that evidence be properly authenticated or identified. *See* Tex.R. Evid. 901. In other words, the proponent must show the trial court that the document or evidence in question is what he purports it to be. *See* Tex.R. Evid. 901(a); *Miles v. Ford Motor Co.*, 922 S.W.2d 572, 597 (Tex.App.—Tex-

arkana 1996), *aff'd in part and rev'd in part on other grounds*, 967 S.W.2d 377 (1998); *Silva v. State*, 989 S.W.2d 64, 67–68 (Tex.App.—San Antonio 1998, pet. ref'd). Authentication may be accomplished by various means; one example offered by Rule 901 is where the evidence is authenticated by the testimony of a witness with knowledge. *See* Tex.R. Evid. 901(b); *Angleton v. State*, 971 S.W.2d 65, 68 (Tex.Crim.App.1998) (finding that an individual who had listened to an original tape recording and a copy had sufficient knowledge to authenticate the copy).

■ Here, Ms. Waring testified the document was a copy of the administrative judge's opinion and order. However, she was not the author of the opinion and order; neither did she purport to have any personal knowledge of the opinion and order by which she could confidently authenticate a copy. Although Waring vouched for the authenticity of the document, her naked assertion, without some logical basis, is insufficient. Accordingly, the trial judge erred in overruling appellants' objection to the evidence.

■ Reversible error, however, may not be based upon the improper admission of evidence unless a substantial right of the appellant has been affected. *See* Tex.R. Evid. 103(a). Here, appellants do not allege or suggest the documents in question have been manufactured, modified, or otherwise altered. In other words, appellants do not dispute the exhibit is what it purports to be, namely, a true copy of the opinion and order of the administrative judge. Appellants contend only that the exhibit was not properly authenticated before it was admitted in evidence. Thus, the error relates not to the prejudicial impact of irrelevant evidence, but the proponent's failure to lay a technical predicate for its admission. Under the facts presented here, we cannot say appellants' substantial rights have been affected. Accordingly, we find no reversible error.

### Expert Testimony

During its case-in-chief, the assistant attorney general asked Ms. Waring if Mega Child Care was in operating in violation of the law. Appellants objected to the question on the ground that Ms. Waring was not qualified to give expert testimony.[1] The objection was overruled and Ms. Waring testified that Mega Child Care was "operating under a violation of the law and violating quite a few standards in the minimum standards for daycare licensing."

On appeal, appellants contend Waring was permitted to testify "without being qualified as an expert." Later in their brief, appellants claim the "witness was not qualified as a witness which is required by the first element of TRCE 702." Appellants do not further define or clarify their complaint. Presumably, appellants are complaining that Waring was not qualified to give an opinion on the mixed question of law and fact as to whether appellants were operating a child care center in violation of Chapter 42 of the Human Resources Code.

 We first observe that no witness is authorized to offer an opinion on a pure question of law. See *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 365 (Tex.1987); *Holden v. Weidenfeller*, 929 S.W.2d 124, 133 (Tex.App.—San Antonio 1996, pet. denied). However, an expert witness may offer an opinion on a mixed question of law and fact. *See id.* An issue involves a mixed question of law and fact when a standard or measure has been fixed by law and the question is whether the person or conduct measures up to that standard. *See Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d 103, 134 (Tex.App.—Texarkana 1994, no writ). Where, as here, the expert is not a lawyer, the witness must be provided the proper legal concepts with which to analyze the facts. *See Lyondell Petrochemical Co. v. Fluor Daniel, Inc.*, 888 S.W.2d 547, 554 (Tex.App.—Houston [1st Dist.] 1994, writ denied)(holding that industrial safety expert was authorized to give opinion as to whether defendant's training program violated specific OSHA regulations); *Keene Corp. v. Rogers*, 863 S.W.2d 168, 176–77 (Tex.App.—Texarkana 1993, no writ) (suggesting that an epidemiologist could, if supplied with the proper legal concepts, offer an opinion as to whether asbestos products are unreasonably dangerous). Here, the legal standard against which appellants' actions were analyzed was Chapter 42 of the Human Resources Code. Thus, Waring offered an opinion on a mixed question of law and fact regarding whether appellants' actions violated the

---

1. When the State's attorney asked the witness if appellants were in violation of the law, appellants' counsel initially made the following objection:

 MR. MORRIS: Calls for a conclusion of law, and it's speculation. It's up to the Court to make a decision as to whether or not the law has been violated, not about—not for this witness to rule about it.

 She has not been qualified under Daubert as an expert to give an opinion on a matter of law or establish that she has the ability or the training or expertise to give an opinion on a matter of law. She's not a lawyer. She's not a judge.

The trial court sustained the objection. Thereafter, the following testimony and objections were had:

 Q. Ms. Waring, you testified that you have eight years experience as a supervisor?
 A. Yes, sir.

 Q. And so, you know when a daycare is operating outside the law or inside the law -
 MR. MORRIS: Objection, your Honor, calls for a conclusion.
 THE COURT: Overruled.
 Q. Don't you?
 A. Yes, I do.
 Q. And in your professional opinion based upon eight years of experience as a supervisor in child care and licensing with DPRS, is it your opinion that this daycare was operating in violation of the law?
 A. Yes, they were operating in violation of the law and violation -
 MR. MORRIS: Objection, your Honor. She's not qualified to give an opinion as an expert on this issue.
 THE COURT: Overruled.

code.[2]

As for Waring's qualifications, no rigid formula exists for determining whether a particular witness is qualified to testify as an expert. *See Rogers v. Gonzales,* 654 S.W.2d 509, 513 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e) (holding "it is almost impossible to lay down any definite guidelines for determining the knowledge, skill or experience required in particular case or of a particular witness"); *Roise v. State,* 7 S.W.3d 225 234 (Tex. App.—Austin 1999, pet. ref'd). The inquiry must be into the actual qualification. *See Broders v. Heise,* 924 S.W.2d 148, 153 (Tex 1996). There must be a "fit" between the subject matter at issue and the expert's familiarity therewith. *See id.* The proponent must establish that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the trial court which would qualify the expert to give an opinion on that particular subject. *See id.* The admission of expert testimony is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *See Gammill v. Jack Williams Chevrolet,* 972 S.W.2d 713, 718–19 (Tex.1998).

Ms. Waring testified she has a degree in sociology, has been employed by DPRS for twenty years, has been in the child care licensing division for ten years, and has been a supervisor for DPRS for eight years. Rule 702 authorizes an expert to give an opinion based on practical experience. *See* Tex.R. Evid. 702; *Carter v. State,* 5 S.W.3d 316, 320 (Tex.App.—Houston[14 Dist.] 1999, pet. ref'd). We cannot say the trial court abused its discretion in allowing Ms. Waring to testify as an expert.

### Best Evidence and Hearsay

The assistant attorney general asked Ms. Waring what she had observed while visiting Mega Child Care shortly before the hearing. Her narrative response, liberally interspersed with appellants' objections, occupies several pages of the record. Ms. Waring said:

> I asked were—were there any other children in care besides the one infant. She again pointed me down to the infant room area. I went down there.
>
> * * *
>
> I asked if there was any paper work on the children, and she pointed to a—an attachment to the file cabinet that had some files in it.
>
> * * *
>
> I looked at the paperwork that was there. There were three files on three different children. The information that was in the files did not—with their date of birth—did not correspond to the ages of the children that I saw.

Appellants objected to the first statement as inadmissible hearsay; the second as both inadmissible hearsay and a violation of the best evidence rule; and the third as a violation of the best evidence rule.

Hearsay, is generally inadmissible; it is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex.R. Evid. 801, 802. Here,

---

**2.** We are not sure how this testimony assisted the trier of fact to understand the evidence or determine a fact in issue. *See* Tex.R. Evid. 702. Where the trier of fact is equally competent to form an opinion regarding an issue of ultimate fact, the expert's testimony as to *these issues* may be excluded. *See Glasscock v. Income Property Services,* 888 S.W.2d 176, 180 (Tex.App.—Houston [1 st Dist.] 1994, writ dism'd). Here, appellants' conduct does not appear so complex as to require expert testimony on the issue of whether it complied with the requirements of the Human Resources Code. However, even if appellant had raised this complaint on appeal, the error would have been harmless. *See GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 620 (Tex. 1999) (holding there is little danger in an expert's answer to an all-embracing question on a mixed question of law and fact).

neither of the employee's gestures were offered to prove the truth of the matter asserted, i.e, that other children were in the direction of the infant room or that paper work was in a particular place. Rather, the testimony was elicited to show Mega Child Care was open for business and caring for children.

■ The "best evidence rule" provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by law." TEX.R. EVID. 1002. The second statement, that an employee gestured at a file cabinet does not allude to the *contents* of any writing. Thus, the best evidence rule is not applicable.

■ In the third statement, Ms. Waring's statement makes reference to a paperwork discrepancy. Accordingly, this testimony alludes to the contents of a writing. However, if the writing is not closely related to a controlling issue in the case, its contents may be admissible without the necessity of offering the original into evidence. *See* TEX.R. EVID. 1004(e). Here again, the issue in dispute was whether Mega Child Care was open for business after its license had been revoked. Ms. Waring's observations confirm that Mega Child Care was open for business. Whether its paperwork was in order was entirely collateral to the primary issue before the trial court.

### *Authentication, Best Evidence, and Hearsay*

While on direct examination, Ms. Waring testified regarding Mega Child Care's failure to present the names of its employees to determine whether they had a criminal history:

Q. Now, Ms. Waring, is it a DPRS requirement that a daycare must submit the names of its employee to DPRS to be checked out on a criminal background check before those individuals may be employed?

A. That is correct. And a criminal history check and an abuse and neglect background check must be run on all staff in a child care facility.

Q. Now Ms. Waring, are you personally familiar with the file maintained by DPRS on the Mega Child Care facilities?

A. Yes. I have checked again both files, the files at 8800 Main street and for their other location on gulf freeway, and no check has been submitted on Ms. Vanessa Mills.

Q. Now, is there any record....

At this point, appellant objected to the testimony on the grounds that it violated the best evidence rule, was inadmissible hearsay, and that the files had not been authenticated.

■ Appellants' best evidence objection is without merit. The best evidence rule, by its very terms, applies to the *contents* of a writing. TEX.R. EVID. 1002. The rule can have no application to testimony regarding appellants failure to submit information for inclusion in DPRS files. *See id.; Rice v. State,* 130 Tex.Crim. 342, 93 S.W.2d 1149, 1150 (Tex.Crim.App. 1936) (holding that testimony about the absence of a record to be primary evidence; so that "[o]ne who has examined books may be permitted to testify that they do not show records of transactions inquired about"); *see also* 2A Steven Goode, Olin Guy Wellborn III, and M. Michael Sharlot, TEXAS PRACTICE: COURT-ROOM HANDBOOK ON TEXAS EVIDENCE, Rule 1002 Authors' Commentary at 495 (1999) (declaring that "by weight of authority, the rule does not apply to testimony that written records have been examined and found not to contain a certain matter").

■ Moreover, Ms. Waring's testimony falls within a recognized exception to the hearsay rule, i.e., testimony regarding "the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or

agency." TEX.R. EVID. 803(10). Ms. Waring testified that: (1) child care facilities are required to submit the names of their employees to DPRS before they begin working; (2) DPRS maintains a record of all names of all employees submitted by child care facilities; (3) these files are regularly compiled for the purpose of conducting criminal background checks; and (4) after searching DPRS files, she could find no record of the employee in question.

 Finally, a nonexistent document or document entry, by definition, cannot be authenticated; it does not exist, and no authentication is required. Accordingly, no error is presented.

### EVIDENCE AGAINST BONITA ODUTAYO

 Odutayo contends that before an injunction could properly be granted against her, DPRS was required to prove that: (1) she committed a wrongful act; (2) it had a probable right to relief; and (3) it would probably suffer injury unless the injunction was granted. Odutayo argues that while DPRS introduced evidence showing she was an owner of the facility, if failed to show she was "operating" the child-care facility. Hence, she contends that DPRS has not shown that she committed any wrongful act.

The law, however, authorizes DPRS to file suit for injunctive relief "[w]hen it appears that a person has violated, is violating, or is threatening to violate the [statutory] licensing, certification, listing, or registration requirements." TEX. HUM. RES.CODE ANN. § 42.074 (VERNON 1997). Once this minimal burden is met, the court "shall grant the injunctive relief the facts may warrant." *Id.* Moreover, DPRS was not required "to allege or prove ... that an adequate remedy at law does not exist or that substantial or irreparable harm would result from the continued violation." *Id.*

The evidence shows Odutayo is an owner of Mega Child Care. The evidence also shows Mega Child Care remained open for business after its license to operate had been revoked. The trial court did not abuse its discretion in concluding that Odutayo is violating the statutory licensing, certification, listing, and registration requirements of the State of Texas.

### EVIDENCE AGAINST MEGA CHILD CARE, INC.

Mega Child Care contends the trial court abused its discretion by granting an injunction against it when there was no evidence it had committed a wrongful act or that DPRS would suffer a probable injury. However, because the evidence shows Mega Child Care is continuing to operate as a child-care facility after the revocation of its license, we find the trial court did not abuse its discretion.

Mega Child Care also claims it does not fall under the statutory definition of a "child-care facility," and, therefore, is not subject to DPRS regulations and orders. The law provides that "[n]o person may operate a child-care facility or child-placing agency without a license issued by the department or a certificate to operate" TEX. HUM. RES.CODE ANN. § 42.041(a) (Vernon 1997). The Human Resources Code defines a "child-care facility" as:

> ... a facility *licensed or certified by the department* to provide assessment, care, training, education, custody, treatment, or supervision for a child who is not related by blood, marriage, or adoption to the owner or operator of the facility, for all or part of the 24–hour day, whether or not the facility is operated for profit or charges for the services it offers.

*Id. at* § 42.002(3) (emphasis added). Any entity that does not fall under the statutory definition of "child-care facility" is, of course, not bound by the regulations covering "child-care facilities." [3] Mega Child

**3.** For example, a stay at home parent would be related to the child, and thus not bound by § 42.041(a).

Care contends that, because it is now neither licensed nor certified by the department, it does not fall within the statutory definition of a "child-care facility" and cannot be barred from operating.

 In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex. 1999); *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998). We first look at the statute's language, and presume that the Legislature intended the plain meaning of its words. *See Fleming Foods v. Rylander*, 6 S.W.3d 278, 282 (Tex.1999); *Fitzgerald v. Advanced Spine Fixation*, 996 S.W.2d 864, 865 (Tex.1999); *Albertson's*, 984 S.W.2d at 960. We then look to the legislative history, the circumstances under which the statute was enacted, the object sought to be obtained, the consequences of a particular construction, and the administrative construction of the statute. *See* Tex. Gov't Code Ann. § 311.023 (West 1998); *Union Bankers Ins. Co. v. Shelton.*, 889 S.W.2d 278, 280 (Tex.1994). We do this regardless of "whether or not the statute is considered ambiguous on its face." Tex. Gov't Code Ann. § 311.023 (West 1998). We also consider at all times "the old law, the evil, and the remedy." Tex. Gov't Code Ann. § 312.005 (West 1998). Finally, we give serious consideration to an agency's interpretation of an ambiguous statute it is charged with enforcing, especially when it has special expertise in the area, so long as that interpretation is reasonable. *See Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex.1993); *Texas Utils. Elec. Co. v. Sharp*, 962 S.W.2d 723, 726 (Tex.App.—Austin 1998, pet. denied).

The stated purpose of the statute "is to protect the health, safety, and well-being of the children of the state who receive care outside their homes by establishing statewide minimum standards for their safety and protection." Tex. Hum. Res. Code Ann. § 42.001 (Vernon 1979). Appellant's construction would essentially annul the statute. The term "child care facility" is incorporated within most of the definitions and regulation of other child-care entities.[4] If appellant's interpretation of the statute is correct, every child-care facility, day-care center, foster home, foster group home, child placing agency, group day care home, etc. could exempt itself from state regulation by merely rejecting its license. We doubt this was the Legislature's intent.

Appellant's interpretation would relieve child-care facilities from adhering to regulations that, for example, require employees to receive training in "recognizing and preventing shaken baby syndrome," "preventing sudden infant death syndrome," recognizing the "symptoms of child abuse, neglect, and sexual molestation," "the application of first aid," and "the prevention and spread of communicable diseases." *Id. at* §§ 42.0421(a), 42.0426 Under appellant's construction, there would be no requirement that these entities have all areas of their facility "be accessible to a parent ... if the parent visits the child during the facility's hours of operation"; that they have "adequate and healthy food service"; or that they require immunizations against "diphtheria, tetanus, poliomyelitis, mumps, rubella, and rubeola." *Id.* at. §§ 42.0427, 42.042(e)(4), 42.043(b). Under appellant's construction, there would be no requirement that owners, directors, and employees pass background or criminal history checks; thereby fostering the frightening specter of parents unknowingly placing their children with criminals and sexual predators. *See id.* at § 42.057. Finally, under appellant's construction, the department would have no regulatory

---

4. For example, the statute says that " '[d]ay care center' means a *child-care facility* that provides care for more than 12 children under 14 years of age for less than 24 hours a day" and a " '[f]oster group home' means a *child-care facility* that provides care for 7 to 12 children for 24 hours a day." Tex. Hum. Res.Code Ann. § 42.002 (Vernon 1999) (emphasis added).

oversight even of an entity that presents "an immediate threat to the health and safety of the children attending or residing in the facility." *Id.* at § 42.073.

We concur with the department's assertion that appellant's construction makes a mockery of a regulatory scheme expressly designed to protect children. However, we may not ignore the words "licensed or certified" in the definition of "child-care facility" merely because their inclusion endangers children. When the Legislature amended the statutory scheme controlling the regulation of child-care facilities, the only meaningful change made to § 42.002(3) was the insertion of "licensed or certified by the department."[5] Were we to simply ignore these words, we would be returning the statute to its pre-amendment form; this cannot have been the Legislature's intent. Rather, we find in reading the entire statute that the phrase "licensed or certified" within the definition of "child-care facility" in § 42.002(3) should be read inclusively rather than exclusively.

The 75th Legislature amended the Human Resources Code to provide for the *licensing* of some child-care entities, the *certification* of others, and the mere *registration* of family homes caring for children that are not related to the owner or operator of the facility. The Legislature amended the definition of "child-care facility" only as a further expression of that intent. One evidence of this intent is found in a putative definition of "child-care facility." The 75th Legislature mistakenly enacted two different definitions of "child-care facility," both designated as Section 42.002(3) of the Human Resources Code. The first definition it enacted defines a facility as one that is "licensed, certified, *or registered* by the department." *Id.* at § 42.002(emphasis added). Later, the

Legislature enacted the definition which provides that a facility is merely one that is "licensed or certified by the department." Although similar, the definitions cannot be harmonized; thus, the last enacted definition, prevails. *See* Tex. Gov't Code Ann. § 311.025 (Vernon 1999). However, it seems obvious from the two definitions the Legislature was attempting to make the definition of "child-care facility" consistent with amendments to other sections of the code.

The bill analysis further clarifies the Legislature's intent by again emphasizing the need to bring both licensed and registered facilities under the supervision of DPRS:

> Specifies the terms by which DPRS is required to promulgate minimum standards that apply to licensed child-care facilities *and to* registered family homes covered by this chapter. Clarifies that all regulatory provisions of this chapter apply to registered facilities *as well as* licensed facilities.

House Comm. on Human Services, Bill Analysis § 18, Tex. S.B. 359, 75th Leg., R.S. (1997) (emphasis added). Thus, the statute was intended to include "registered family homes within the regulatory provisions regarding suspension, evaluation, or probation of a license or registration." *Id.* at § 28 (emphasis added). The Legislature expressly intended the amendments to create a "flexible response system that provides for a full investigation of reports of serious abuse or neglect, but allows for less serious reports to be addressed through family assessment or intervention service" *Hearings on Tex. S.B. Before the Senate Comm. on Health & Human Services,* 75th leg., R.S. (March 19, 1997).

---

**5.** The legislature amended the statute as follows:

> (3) "Child-care facility" means a facility *licensed or certified by the department to provide assessment,* [~~that provides~~] care, training, education, custody, treatment, or supervision for a child who is not related by

blood, marriage, or adoption to the owner or operator of the facility, for all or part of the 24–hour day, whether or not the facility is operated for profit or charges for the services it offers.

Act of May 31, 1997, 75th Leg. R.S., ch. 1022, § 23, 1997 Tex. Gen. Laws 3742.

Accordingly, we find that while the definition of "child-care facility" is inelegantly drafted, the Legislature did not intend by its amendment of Section 42.002(3) to exclude from regulation all facilities that were not licensed or certified; rather, its desire was to clarify its intention that *both* licensed *and* certified facilities should be subject to the statute. Thus, Mega Child Care did not acquire immunity from regulation when its license was revoked.

### DOCUMENT INTRODUCTION

Appellant's final contention is that the trial court abused its discretion by improperly permitting documents to be admitted into evidence during closing arguments. The record reflects the assistant attorney general did not formally offer certain documents into evidence during the State's case-in-chief. When appellants' counsel made note of this omission, the assistant attorney general immediately sought permission to introduce three exhibits into evidence: (1) exhibit A, the order upholding their revocation of Mega Child Care's license; (2) exhibit B, the order with respect to Mrs. Odutayo individually; and (3) exhibit C, the affidavit of Ms. Waring.[6] Appellants objected, contending the exhibits were inadmissible and that, procedurally, the department should have moved for admission during its case-in-chief.

Appellant cites no authority precluding the admission of evidence after both parties have rested. Instead, appellants merely re-urge the evidentiary issues already analyzed above. The Rules of Civil Procedure permit the trial court in a bench trial to receive additional evidence at any time "[w]hen it clearly appears to be necessary to the due administration of justice." TEX.R. CIV. P. 270. The court's decision caused no delay or injustice and, considering the decisive nature of the evidence, we cannot say that the trial court abused its discretion. *See In re A.F.*, 895 S.W.2d 481, 484 (Tex.App.—Austin 1995, no writ).

We affirm.

---

6. The affidavit of Ms. Waring is hearsay. However, the affidavit is merely a summary of her testimony presented on direct examination which was subject to cross-examination by appellants' counsel. Thus, any error in its admission was harmless. *See Owens–Corning Fiberglas*, 916 S.W.2d at 559 (holding that when erroneously admitted evidence is merely cumulative, any error in its admission is harmless).